OPINION
LESLIE BROCK YATES, Justice.
In this breach of contract case, a jury awarded appellee Checkpoint Systems, Inc. $2,565,500, plus interest and attorney’s fees against appellants Richard Nip and Nip Lung Kwan. The case arises from a dispute over whether appellants complied with several material provisions of a Purchase and Sale Agreement (“Agreement”), in which Checkpoint agreed to purchase .AW Printing, a business owned by appellants. We affirm the trial court’s judgment.
Appellants challenge the legal and factual sufficiency of the evidence to support the jury’s findings. They argue the evidence is insufficient to support the jury’s findings that (1) appellants breached the Agreement, (2) Checkpoint sustained any damages or that Checkpoint sustained damages in the amount of $2,565,500 because that figure was based on unreliable expert witness testimony, (3) Checkpoint established both the value of AW Printing if appellants had complied with the terms of the Agreement and the actual value of AW Printing at closing, and (4) appellants’ breach of the Agreement caused all of the damages sustained by appellee.

Legal and Factual Sufficiency Claims

Standards of Review

When reviewing a “no evidence” or legal sufficiency challenge, we view the evidence in the light most favorable to the finding of disputed fact and disregard all evidence and inferences to the contrary. Kerr-McGee Corp. v. Helton, 133 S.W.3d 245, 254 (Tex.2004). If there is more than a scintilla of evidence to support the challenged finding, a legal sufficiency challenge must fail. Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex.2003). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782-83 (Tex.2001).
When considering a factual sufficiency challenge, we consider all of the evidence, *755 not just that which supports the verdict. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.1998). We set aside the verdict only if it is so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. Id. at 407. However, we may not assess the witnesses’ credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. Id.

Breach of the Agreement

We first address appellants’ argument that the evidence is legally and factually insufficient to support the jury’s finding that they breached the Agreement. Section 4.8 of the Agreement provides in relevant part: “Except as set forth in Schedule 4.8, since July 14, 2000 (which is the date the Parties entered into the letter of intent regarding the purchase and sale of the Acquired Shares), the Acquired Company has operated in the Ordinary Course of Business and there has not been any Material Adverse Change with respect to the Acquired Company.” Section 1.1 of the Agreement defines Material Adverse Change (or Effect) as
a change (or effect) in the condition (financial or otherwise), properties, assets, liabilities, rights, obligations, operations, business, or prospects which change (or effect), individually or in the aggregate, adversely affects, or could reasonably be expected to adversely affect, such condition, properties, assets, liabilities, rights, obligations, operations, business, or prospects in an amount equal to or greater than $50,000.
Checkpoint presented evidence at trial supporting the conclusion that a material adverse change in appellants’ business had occurred and that appellants had failed to disclose such a change to Checkpoint prior to closing. Jim Cantrell, the West Coast branch manager for AW Printing, testified that his company learned on the afternoon of January 3, 2001, less than one week prior to the closing on January 9, that Gymboree, AW Printing’s second-largest customer, was attempting to cancel all of its Asian orders and switch to a printer located in Hong Kong or China. This fact was confirmed by the testimony of Rakesh Tandon, AW Printing’s vice president and treasurer, who stated that he learned from appellant Richard Nip that Gymboree had wanted to make a change in its supplier. Jeff Balcombe, Checkpoint’s damages expert, testified that there was a ninety-five percent change in revenue from 2000 to 2001 for AW Printing’s Far East factories. According to Balcombe, revenue from the Far East Gymboree business during the year 2000 was $1,739,306; in 2001, revenue from the same dropped dramatically to only $87,266.
Not only did appellants fail to disclose the fact that Gymboree was attempting to cancel all of its Far East orders, but appellants actively tried to conceal this fact from Checkpoint. Tandon testified that appellant Richard Nip instructed him not to mention any word of this to anyone, “not even to Checkpoint,” because AW Printing did not want to stop the closing from going through; besides, Nip had told Tandon he had “too much money committed in investing in horses” for the deal with Checkpoint not to be consummated. Nip later asked Tandon to prepare a memorandum falsely showing that the decline in Gymboree business occurred after the closing date. Cantrell testified that Nip had instructed employees of AW Printing to falsely reply, “YOUR ORDER HAS ALREADY BEEN PRODUCED,” in response to any attempts by agents of Gym-boree to cancel its orders; this response would enable AW Printing to claim that it had not received any cancellations from Gymboree because such cancellations had not been accepted.
*756 Based on the evidence above, a reasonable finder of fact could conclude that the loss of AW Printing’s business with its second-largest customer, Gymboree, was a material adverse change under the Agreement because such a loss in future business prospects could reasonably be expected to exceed the amount of $50,000.
Appellants challenge this evidence by claiming that there is no evidence that the value of Gymboree order cancellations ever approached an amount totalling $50,000; they point to Cantrell’s testimony that the sum total of the cancelled orders was less than $15,000. But this argument does not address the future effect that the loss of Gymboree’s business could reasonably be expected to have upon AW Printing’s business. Appellants also argue, citing the testimony of Cantrell, that Gymboree did not make such a dramatic decision to discontinue the use of AW Printing’s services prior to the closing date because AW Printing had received several new orders from Gymboree early in 2001. They claim, citing the testimony of Gymboree’s vice president of production, Michael Mayo, that the decision to use companies other than AW Printing occurred in March 2001, which is after — not before — the January 9, 2001 closing date. However, the sum of this testimony, while probative and perhaps even persuasive on the issue of whether the loss of some quantity of AW Printing’s Gymboree business constitutes a material adverse change prior to the closing date, cannot be considered as overwhelming in relation to the weight of evidence presented by Checkpoint. Moreover, we are not in a position to assess the credibility of the witnesses and cannot substitute our judgment for that of the jury.
We therefore find the evidence is legally and factually sufficient to support the jury’s finding that appellants breached the Agreement.

Reliability of the Expert Witness Testimony

We next address appellant’s arguments that the evidence is légally and factually insufficient to support the jury’s award of damages because it was based on unreliable expert witness testimony. Appellants question the reliability of the testimony provided by Checkpoint’s damages expert, Jeff Balcombe, because his methodology (1) leads to the “absurd conclusion” that a reduction of 10.6% in AW Printing’s profits for only one year resulted in a 27% reduction in the value of AW Printing, (2) wrongly assumes that there is no possibility that AW Printing would ever replace the decline in the year 2000 profits from Gymboree Far East factories with other business, and (3) wrongly applies an earnings before interest and taxes (“EBIT”) multiple, rather than a gross profits multiplier, in the calculation of Checkpoint’s damages. They further contend that Bal-combe’s methodology is unreliable because it (4) only utilizes one year of data in the calculation of Gymboree Far East’s profits, (5) wrongly assumes that Gymboree Far East would have purchased the same amount of product it purchased in 2000 for each year thereafter, and (6) wrongly assumes that any reduction in AW Printing’s EBIT would have reduced the price that Checkpoint would have been willing to pay to the same degree.
In response to these contentions, Checkpoint raises the defense of waiver, citing Coastal Transport Co. v. Crown Central Petroleum Corp., 136 S.W.3d 227 (Tex.2004). In that case, the Supreme Court of Texas stated:
We therefore conclude that when a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis. *757 However, when the challenge is restricted to the face of the record, for example, when expert testimony is speculative or conclusory on its face, then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility.
Id. at 233. Based on this authority, we conclude that appellants were required to present a timely objection to the trial court as to each of their contentions listed above in connection with the reliability issue because each requires the court to evaluate the underlying methodology and foundational data.
We must therefore determine whether appellants have preserved each of their six contentions for appellate review. Appellants assert that all six contentions were preserved through either their pretrial motion to exclude, or post-trial motion for judgment notwithstanding the verdict, motion for new trial, and motion to modify judgment. However, any objection presented after the jury verdict has been returned comes too late. Ellis, 971 S.W.2d at 409-10. We may therefore consider only those contentions that were raised in appellants’ pre-trial motion to exclude.
Appellants’ motion to exclude contained only two arguments in relation to their claim that Balcombe’s testimony is unreliable and therefore inadmissible. In that motion, they argued that Balcombe’s methodology incorporates two erroneous assumptions: first, that Gymboree Far East had the same level of business activity in 2001 as it had in 2000, and second, that AW Printing was “doomed to lose all of Gymboree’s Far East business” as of the closing date. Appellants have evidently abandoned the second of these arguments in this appeal; however, the first of these arguments was preserved by virtue of their motion to exclude and has been advanced again in this appeal as contention (5) listed above.
Accordingly, we hold that contentions (1), (2), (3), (4), and (6), as Usted above, have been waived by appellants. See Coastal Transport, 136 S.W.3d at 233. We thus find it necessary to evaluate the merits of only appellants’ fifth contention.[1]
In their fifth contention, appellants argue the evidence is legally and factually insufficient to support the jury’s damages award because Balcombe’s methodology *758 wrongly assumes that Gymboree would have purchased the same amount of product it purchased in 2000 for the following year.[2] We disagree. Appellants’ own damages expert, James M. Hill, testified that AW Printing’s year 2000 profits provided a valid basis for forecasting its 2001 profits. Moreover, Balcombe testified that, in calculating the damages incurred by Checkpoint, he relied upon the report compiled by PriceWaterhouseCoopers stating (according to Balcombe) that “the major customer accounts were all expected to continue in 2001 at the same levels as they had in 2000. And Gymboree was specifically identified as an account that management forecast[s] to do as well in 2001 as it did in 2000.” Because Balcombe’s methodology incorporates an assumption supported by appellants’ own evidence, as well as an independent third party’s finding, we find that appellants’ fifth contention, which is the sole contention preserved for review, is without merit. We conclude that the trial court did not err in its reliability finding; appellants’ legal and factual sufficiency challenges to the damages award on this basis must therefore fail.
Appellants separately argue the evidence is legally and factually insufficient to support the jury’s verdict because (1) Checkpoint failed to establish both the value of AW Printing if appellants had complied with the terms of the Agreement and the actual value of AW Printing at closing and (2) appellants’ breach of the Agreement did not cause all of the damages sustained by Checkpoint. However, appellants’ contentions concerning these issues are strictly confined to attacks upon the reliability of the methodology utilized by Balcombe, Checkpoint’s damages expert, in reaching his conclusion as to the proper amount of damages sustained by Checkpoint as a result of appellants’ breach. Because we have already addressed the reliability issue and found all of appellants’ properly preserved contentions to be without merit, we find the evidence legally and factually sufficient to support the jury’s damages and causation findings on these grounds.[3]
*759 Because we have found the evidence legally and factually sufficient to support the jury’s verdict, we affirm the trial court’s judgment.
ANDERSON, J., dissenting.

. While appellants acknowledge that none of the waived contentions was mentioned in their motion to exclude, they claim that error was adequately preserved as to each of the waived contentions because these contentions were contained within Exhibit B, which was attached to the motion to exclude and included the affidavit and expert report of their damages expert, James M. Hill. We disagree. To preserve error, the record must show that the trial court was aware of the objections advanced in Hill’s report and ruled on them, either expressly or implicitly. See Tex.R.App. P. 33.1(a)(1)(A), 33.1(a)(2)(A). Plainly, the record shows that neither of those conditions was fulfilled.
Alternatively, appellants claim that the trial court should have been aware that additional legal grounds for their motion to exclude existed and were included in Hill’s report. However, the content of their motion belies this claim. While appellants’ motion does make periodic references to Hill’s report, such notations cannot be interpreted to serve as anything more than mere references to Hill’s report for amplification and support of the statements made within the motion. While it may be true that, as appellants suggest, Hill's expert report was only seven pages long and it would therefore be ''inconceivable that a conscientious trial judge” would not have considered it, we note that this expert's report was only one small part of the voluminous series of documents filed as attachments to their motion to exclude; altogether, the motion to exclude with attachments consisted of over one hundred pages. We do not find it unreasonable for the trial court under such circumstances to assume that all legal grounds supporting the ruling sought by the movant are contained in the motion.

. While appellants' fifth contention is actually that Balcombe’s methodology wrongly assumes that "Gymboree Far East would have purchased the same amount of product it purchased in 2000 for each year thereafter,” this is not the exact argument raised in the trial court. In the court below, appellants argued that the wrong assumption was that "Gymboree Far East had the same level of business activity in 2001 that it had in 2000.” Therefore, we address only that portion of the argument that was properly preserved.

. The dissent concludes, based solely on its interpretation of Jury Question 2, that there is no evidence to support the jury’s implicit use of the $10.8 million purchase price in calculating damages because there is no evidence of the value of AW Printing if appellants had complied with the contract by disclosing the loss of the Gymboree business. This argument is not properly before us because it was not raised in appellants’ initial brief. Contrary to the dissent’s conclusion, this technical argument regarding the wording of the charge is not fairly included within a general sufficiency point focusing on the flaws in expert testimony. As the dissent acknowledges, the appellants made this precise argument repeatedly to the trial court, but they chose not to include it in their opening brief. In fact, it was not mentioned on appeal until a post-submission brief filed in response to questioning at oral argument, and therefore it is waived. See Zamarron v. Shinko Wire Co., 125 S.W.3d 132, 139 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (complaint waived because not raised in initial brief); City of Houston v. Precast Structures, Inc., 60 S.W.3d 331, 340 n. 4 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (argument raised first time in post-submission brief waived).
Even if the issue were properly before us, the dissent’s reading of the jury instruction is too narrow. We are to read jury instructions like jurors do — with common sense. See City of Brenham v. Honerkamp, 950 S.W.2d 760, 764 (Tex.App.-Austin 1997, pet. denied); Charter Oak Fire Ins. Co. v. Dewett, 460 *759 S.W.2d 468, 472 (Tex.Civ.App.-Houston [14th Dist.] 1970, writ ref’d n.r.e.); see also Broughton v. Humble Oil & Ref. Co., 105 S.W.2d 480, 485 (Tex.Civ.App.-El Paso 1937, writ ref'd) ("Theoretical perfection of expression as to each isolated sentence is not the end sought, else there would seldom be found unobjectionable instructions. Natural, not strained, constructions should prevail.”). If possible, we must interpret the jury's findings to avoid a "nonsensical result” and in a manner that upholds the judgment. Otis Spunkmeyer, Inc. v. Blakely, 30 S.W.3d 678, 685-86 (Tex.App.Dallas 2000, no pet.); see also Jackson v. U.S. Fid. & Guar. Co., 689 S.W.2d 408, 412 (Tex.1985). A reasonable interpretation of the instruction is that "the value of AW Printing had [the appellants] complied” means the value of the contract if no breach had occurred. In other words, the jury was entitled to conclude that if the appellants had complied, Checkpoint would have received $10.8 million of value. Under this interpretation of the instruction, the purchase price clearly constitutes some evidence by which the jury could have properly calculated damages.