# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00273-CV

**Lawrence White, Appellant**

**v.**

**Patrick Browning, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. GN203641, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Patrick Browning sued Lawrence White for injuries he sustained in an automobile collision with White. The jury awarded Browning damages for future physical pain and mental anguish and for past and future losses of earning capacity. On appeal, White argues that the trial court erred in granting Browning's motion to exclude White's expert witness. In addition, he asserts that the evidence is neither legally nor factually sufficient to support the jury awards. We will affirm the judgment of the district court.

## BACKGROUND

Browning has a degree in business and engineering and is a salesman and minority stockholder of Texonics, a company that sells high-tech equipment for building machines. White and Browning were involved in a motor vehicle collision in October 2000. As a result of the collision, Browning sustained several injuries, including bruising, cracked bones, and injuries to his face. In addition, Browning was diagnosed as suffering from a "closed head injury," which occurs when the neural connections are disrupted by a blow to the head or a rapid deceleration, affecting the ability to process, organize, and understand information.

Ultimately, Browning filed suit against White, seeking to recover damages for injuries he sustained in the collision. Sixty days before trial was originally set, White designated Dr. Tallman as a potential expert witness to contest, among other things, the diagnosis that Browning had sustained a closed head injury. In response, Browning filed a motion to exclude White's expert alleging Dr. Tallman was not designated within the time required by the rules of civil procedure. The district court granted the motion. Subsequently, the trial was postponed. At trial, Browning claimed these injuries had a negative effect on his efficiency and effectiveness in the workplace. In addition, Browning claimed that he suffered from memory loss and a loss in his ability to concentrate as a result of the collision.

The jury found that ninety-five percent of the responsibility for the collision was attributable to White and awarded Browning $890,012.67, including $500,000 for future physical pain and mental anguish, $25,000 for loss of past earning capacity, and $150,000 for loss of future

2

earning capacity. The district court's judgment incorporated the verdict of the jury. White appeals the judgment of the district court.

## DISCUSSION

On appeal, White raises three issues. In his first issue, he asserts that the district court erred in granting Browning's motion to exclude. In his second and third issues, he argues the evidence is neither factually nor legally sufficient to support the awards for future physical pain and mental anguish and for past and future loss of earning capacity.

**Motion to Exclude**

In his first issue, White asserts that the court erred in excluding his expert witness. A trial court's decision to exclude an expert is reviewed for an abuse of discretion. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994); *Frazin v. Hanley*, 130 S.W.3d 373, 377 (Tex. App.—Dallas 2004, no pet.). The test for abuse of discretion is not whether the reviewing court agrees the facts present an appropriate case for the trial court's action. *See Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003).

The rules of civil procedure provide deadlines for when an expert must be designated. Unless otherwise ordered by a court, a party is required to designate its expert witnesses within the later of the following two dates: (1) 30 days after the opposing party requests the designation or (2) within 60 days before the end of the discovery period, unless the expert is testifying for a party

seeking affirmative relief in which case the party must designate within 90 days. Tex. R. Civ. P. 195.2; *see also id.* 194.2(f) (allowing party to request name of opposing party's expert witnesses and subject matter of witnesses' testimony).

The parties agreed that the case is governed by the level 2 discovery control plan of rule 190.3. *Id.* 190.1 (requiring discovery control plan); 190.3. Under a level two discovery control plan, for cases not arising under the family code, the discovery period begins when the suit is filed and continues until the earlier of the following dates: (1) 30 days before the date set for trial, (2) nine months after the date the first oral deposition is taken, or (3) nine months after the due date of the first response to written discovery. *Id.* 190.3(b)(1)(B). Consequently, the level two discovery period will end at least 30 days before the date set for trial. Because parties not seeking affirmative relief must designate expert witnesses 60 days before the end of the discovery period unless a court orders otherwise and because the discovery period ends at least 30 days before trial, expert witnesses must generally be designated at least 90 days before trial. *See* Tex. R. Civ. P. 190.3; 195.2; *cf. Wigfall v. Texas Dep't of Crim. Justice*, 137 S.W.3d 268, 272 (Tex. App.—Houston [1st Dist.] 2004, no pet.). In this case, the district court did not order an alternative time for designation. Therefore, because White, as the defendant, was not seeking affirmative relief, he was required to designate his expert 90 days before the trial date.

Under rule 193.6, a party who fails to timely identify a witness is prohibited from introducing the testimony of the witness unless the court finds that (1) there was good cause for the failure to make the response or (2) the failure to make the response will not unfairly surprise or unfairly prejudice the other party. Tex. R. Civ. P. 193.6(a). The burden of establishing good cause

4

or the lack of unfair surprise or prejudice is on the party seeking to introduce the witness.  *Id.* 193.6(b).

*Timeliness*

White contends that Tallman's designation on July 24, 2003, was timely.  At the time, the trial date was set for September 22, 2003,[1] which was only 60 days after the designation.  White contends that this designation was timely because rule 195.6 allows amendment or supplementation of written discovery regarding a testifying expert to be made up to 30 days before trial.  *See* Tex. R. Civ. P. 195.6 (stating supplementation and amendment governed by rule 193.5), 193.5 (specifying that amended or supplemental response must be made reasonably promptly after necessity discovered and that amendment or supplement made less than 30 days before trial presumed not prompt).

In support of this contention, White cites to *Davis v. Davis*, No. 13-01-707-CV, 2003 Tex. App. LEXIS 4934 (Tex. App.—Corpus Christi, June 12, 2003, no pet.) (not designated for publication) and *Ligda v. Watts*, No. 14-00-00919-CV, 2002 Tex. App. LEXIS 3968 (Tex. App.—Houston [14th Dist.] May 30, 2002, no pet.) (not designated for publication).  In *Davis*, the court concluded that the trial court did not abuse its discretion in admitting the testimony of the experts designated 30 days before trial.  *Davis*, Tex. App. LEXIS 4934, at *10.  The court noted that, although rule 195.2 requires an expert be designated 60 or 90 days before the end of the discovery period, rule 195.6 allows amendment or supplementation 30 days before trial.  *Id.* at *9.

---

[1]  The trial date was ultimately moved to January 12, 2004, after White requested a continuance.

5

In *Ligda*, a party supplemented its response to interrogatories, which initially listed expert witnesses, and named a new witness 41 days before trial. *Ligda*, 2002 Tex. App. LEXIS 3968, at *1. At trial, Ligda objected to the admission of the expert's testimony alleging he was untimely designated. *Id.* at *2. The court concluded that supplementing the discovery response 41 days before trial was within the 30 day deadline of rule 193.5, and, therefore, the court would not presume the amendment was not filed reasonably promptly. *Id.* at *8.

White's reliance on the previous two cases and rule 193.5 is misplaced. The basis given for the motion to exclude in *Davis* was the witness's failure to appear at a deposition, not the failure to timely designate a witness. *Davis*, 2003 Tex. App. LEXIS 4934, at *9. In addition, the court concluded that the complaint was not preserved for appeal because the trial court never ruled on the motion. *Id.* Further, the court concluded that, even if there was error in its ruling, the error was not reversible because it did not (1) probably cause the rendition of an improper judgment or (2) probably prevent the appellant from presenting the case to the court of appeals. *Id.*; *see* Tex. R. App. P. 44.1(a) (specifying requirements for reversible error).

Unlike the *Ligda* case, which involved supplementing existing written discovery regarding an expert witness, White's action concerned initial designation of an expert witness 60 days before trial. Further, given our standard of review, other courts concluding that it was *not* an abuse of discretion to allow an expert to be designated less than 90 days before trial does not necessitate a finding that excluding an expert not designated within the time prescribed by statute is an abuse of discretion.

6

In addition, rules 195.2 and 195.6 serve different purposes. Rule 195.6, by its terms, applies to "[a] party's duty to amend and supplement written discovery regarding a testifying expert." Tex. R. Civ. P. 195.6. Rule 195.2, on the other hand, applies to a party's duty to initially designate expert witnesses. *Id.* 195.2. To construe rule 195.6 as allowing a party to designate expert witnesses within 30 days of trial would negate the 60 and 90 day deadlines specified in rule 195.2. *See in re K.L.V.*, 109 S.W.2d 61, 63 (Tex. App.—Fort Worth 2003, pet. denied) (statutes should be construed in way that gives effect to each sentence, clause, phrase, and word if reasonably possible).

Accordingly, we hold that the designation of Dr. Tallman was not timely.[2]

*Good Cause*

White also contends that, even if the designation was untimely, good cause existed to allow the late designation of his expert. Specifically, White asserts that he did not realize he would need his own expert until another expert was deposed and that he quickly obtained an expert witness upon realizing the necessity. White also contends that he believed designating his expert 60 days before the September trial date satisfied discovery agreements existing between the parties.

---

[2] White also cites to *Best Industrial Uniform Supply Co. v. Gulf Coast Alloy Welding, Inc.*, for the proposition that, even if his designation was untimely, excluding the witness's testimony was error. 41 S.W.3d 145 (Tex. App.—Amarillo 2000, pet. denied). In *Best*, the trial court did not allow one of the listed witnesses to be replaced with a current employee of the company. *Id.* at 147. Further, without the ability to replace the witness, the affected party could not proceed on the merits of the case. *Id.* at 148. The appellate court reversed the judgment of the trial court. *Id.* at 149.

Neither of these situations occurred in the present case. Dr. Tallman was not a replacement witness. Further, White was able to proceed with a case on the merits after the exclusion of Dr. Tallman and was able to present the testimony of another expert, Dr. Tucker.

7

In April 2003, months before the September trial date, Dr. Horn, one of Browning's physicians, testified in a deposition that Browning was suffering from a closed head injury. In his testimony, Dr. Horn relied on tests conducted by Dr. Tucker, another physician treating Browning. Several months later, White deposed Dr. Tucker. White contends that Dr. Horn misinterpreted the tests conducted by Dr. Tucker and that, after Dr. Tucker was deposed, he realized it was necessary for him to obtain his own expert. However, White does not explain why he was unable to determine that Dr. Horn had misinterpreted, in his deposition conducted in April 2003, the tests performed by Dr. Tucker until after deposing Dr. Tucker in July 2003.

White also contends that Dr. Tallman's designation 60 days before the trial date in September 2003 complied with discovery agreements allegedly existing between the parties, and, therefore, good cause exists to excuse the untimely designation. White proposed an original trial date of April 25, 2003; however, Browning suggested a trial date of June 2, 2003 and suggested a deadline of April 23, 2003, for White to designate his expert witnesses. White prepared a joint discovery control plan agreeing to the trial date and the expert designation deadline, but the court did not sign the agreement. The parties subsequently agreed to move the trial date to September 22, 2003. White sent a new proposed discovery control plan that contained an August 8, 2003 deadline for designating expert witnesses. August 8 was 44 days before the date set for trial. However, Browning did not respond or agree to this proposed plan, and the court never signed it.

Even assuming that the correspondence between the parties established a discovery plan for the June 2003 trial date, the parties agreed to move the trial date to September, the discovery deadlines had expired without White designating an expert, and no subsequent agreement was

8

entered.  Because the original agreement had expired, because no subsequent agreement had been entered, and because the court did not issue an order specifying discovery deadlines contrary to those specified by statute, Browning was required to designate his experts within the time required by statute.  *See* Tex. R. Civ. P. 195.2.

Under these circumstances, we cannot conclude the district court abused its discretion in failing to conclude good cause was present to justify the late designation of Dr. Tallman.

*Unfair Surprise or Prejudice*

Further, White asserts that Browning was not harmed by the late designation because the trial did not actually occur until January 2004, six months after the designation.  We disagree with White's contention.

White designated Dr. Tallman in July 2003.  Browning filed a motion to exclude Dr. Tallman, and the motion was granted.  The court failed to find, based on the September 22, 2003 trial date, that allowing Dr. Tallman to testify would not unfairly surprise or prejudice Browning.  The trial date was moved because White, not Browning, sought and received a continuance.  Further, the record does not contain any evidence that White made any attempt to reopen discovery after the trial was postponed.  *See id.* 190.5(b) (court must allow additional discovery regarding matters materially changing after discovery cut off if trial postponed to more than three months after discovery ends).

Under these circumstances, we cannot conclude the district court abused its discretion by failing to conclude that Browning would not be unfairly surprised or prejudiced by allowing White's expert to testify.

9

Accordingly, we hold the district court did not abuse its discretion in granting Browning's motion to exclude. *See Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 271 (Tex. App.—Austin 2002, pet. denied) (Ersek did not designate expert witness 90 days before trial as required by rule 195.2; court concluded that Ersek was not allowed, under rule 195.6, to supplement his original response, to designate expert for first time).

*Sanction*

Alternatively, White contends that, even if the designation was untimely, striking his expert witness improperly imposed a sanction against him. As a sanction, White contends the exclusion did not satisfy the requirements specified in *Chrysler Corp. v. Blackmon* and *Transamerica Natural Gas Corp. v. Powell. Chrysler Corp.*, 841 S.W.2d 844, 849 (Tex. 1992) (for sanction to be just, it must satisfy following conditions: sanction must have direct relationship with conduct and sanction must be no more severe than necessary); *Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (same).

We disagree. Rule 193.6 prohibits the admission of the testimony from an untimely designated witness unless good cause for the failure to timely designate the witness is shown or a lack of unfair surprise or prejudice to the other parties resulting from the untimely designation is shown. *See* Tex. R. Civ. P. 193.6. The exclusion of expert testimony for admissibility reasons has been characterized as a substantive deficiency rather than a sanction under rule 215. *See Gillie v. Boulas*, 65 S.W.3d 219, 225 (Tex. App.—Dallas 2001, pet. denied); *see also Bryson v. Reid*, No. 05-03-01152-CV, 2004 Tex. App. LEXIS 6139, at *4 (Tex. App.—Dallas July 12, 2004, no pet.) (exclusion of expert due to failure to complete threshold admissibility requirements); *Kernan v.*

*Cratty*, No. 14-00-00865-CV, 2001 Tex. App. LEXIS, at *5-6 (Tex. App.—Houston [14th Dist.] Sept. 27, 2001, no pet.) (not designated for publication) (trial court had no choice but to exclude testimony of untimely designated expert when good cause or lack of unfair surprise or prejudice not shown and when continuance not asked for). Accordingly, having concluded that the district court did not abuse its discretion in failing to find that good cause was present or that Browning would not be unfairly surprised or prejudiced, we hold that the exclusion of White's expert was proper.

Therefore, we overrule appellant's first issue on appeal.[3]

**Legal and Factual Sufficiency**

In appellant's second and third issues, he contends that the evidence is legally and factually insufficient to support the jury's awards for future pain and suffering and for past and future loss of earning capacity.

In a legal sufficiency review, appellate courts must view the evidence in the light most favorable to the verdict, must credit favorable evidence if reasonable jurors could credit the evidence, and must disregard evidence contrary to the verdict unless reasonable jurors could not disregard the evidence. *City of Keller v. Wilson*, 2005 Tex. LEXIS 436, at *1-2 (Tex. June 10, 2005). The test for legal sufficiency is whether the evidence "at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at *66.

---

[3] Because we conclude that the district court did not abuse its discretion in excluding White's expert witness, we need not address White's argument that the district court's action constituted reversible error under rule 44.1 of the rules of appellate procedure. *See* Tex. R. App. P. 44.1.

11

When considering a factual sufficiency challenge to a jury's verdict, the reviewing court must consider and weigh all of the evidence, not just the evidence that supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Nip v. Checkpoint Sys., Inc.*, 154 S.W.3d 767, 768-69 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The reviewing court may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Maritime Overseas Corp.*, 971 S.W.2d at 407. The reviewing court does not serve as a fact-finder and may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Id*. If the court of appeals determines that the evidence supports the jury's verdict, it is not required to detail all the evidence supporting the judgment when it affirms the trial court's judgment for actual damages. *Id*.

*Future Physical Pain and Mental Anguish*

White contends that the evidence does not support the jury award for future physical pain and mental anguish. In assessing personal injury damages, the jury has wide latitude in determining the amount of the award. *Tagle v. Galvan*, 155 S.W.3d 510, 518 (Tex. App.—San Antonio 2004, no pet.). The process of awarding damages for physical pain and suffering is difficult because the alleged injury is a subjective, nonpecuniary loss. *Dawson v. Briggs,* 107 S.W.3d 739, 750 (Tex. App.—Fort Worth 2003, no pet.); *see Tagle*, 155 S.W.3d at 518.

Similarly, because it is an amorphous concept, the determination of damages for mental anguish is left to the discretion of the jury. *See North Am. Refractory Co. v. Easter*, 988 S.W.2d 904, 912 (Tex. App.—Corpus Christi 1999, pet. denied). However, the discretion is limited.

*Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996). There must be "'direct evidence of the nature, duration, or severity of [the] mental anguish, thus establishing a substantial disruption in'" the plaintiff's daily routine or evidence of a high degree of mental distress and pain "'that is more than mere worry, anxiety, vexation, embarrassment, or anger.'" *See id.* (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). Further, there must be evidence the award is reasonable and fair compensation. *Id.*

White contends that the external, physical injuries Browning complained of had healed. Second, White contends that the neurological injuries complained of do not cause physical pain and do not require treatment with pain relievers. Therefore, White insists the only injury, if any, that Browning might suffer from in the future is mental anguish. Even so, White insists the evidence does not support the $500,000 award because Browning was able to work eight hours a day, sometimes longer, and because his primary complaint was one of concentration and memory, not pain.

White also contests the memory and concentration claims. White points to a statement by one of White's doctors stating Browning had a mild memory problem prior to the collision and to a comment made by Browning on a medical form before the collision questioning whether he had problems with his memory. White also points to testimony from one of Browning's doctors stating that depression, for which Browning was treated, can mimic the effects of a head injury. Finally, White cites to previous injuries and health problems as factors relating to his cognitive difficulties.

Similarly, White argues that Browning's emotional state does not constitute legally or factually sufficient evidence to support an award of mental anguish. Further, White contends there was no showing of a substantial disruption of Browning's daily routine resulting from mental anguish. We disagree with this characterization of the evidence.

Browning's physician testified that he was able to conclude that the injuries Browning sustained in the collision were the cause of his cognitive impairments and was able to rule out all other possible causes. Tests performed on Browning indicated that Browning was an intelligent man but his attention span, ability to concentrate, and memory are now impaired.[4] Browning's physician further testified that Browning's cognitive impairments were permanent and that Browning would not improve in the future. Although Browning had sustained two head injuries while in the military and experienced other health problems, he testified that, unlike his present injuries, none of his previous health issues had impaired his ability to perform his job.

In addition, Browning's co-workers testified that work interactions with Browning are frustrating because he forgets to perform assignments and forgets conversation topics while on the phone. They also testified that Browning apologizes repeatedly when he is reminded of the necessity to complete a task and blames himself for his failure to perform the task. Further, Browning testified that some of his co-workers found the ameliorative actions he has to engage in at work, including tape recording conversations, to be humorous.

---

[4] One of Browning's physicians noted in Browning's medical record that Browning needs to write down tasks he is required to do in order to remember to perform the tasks. This statement was written after Browning had missed a doctor's appointment. Although Browning had remembered he had an appointment, he went to the wrong doctor's office.

14

Browning also testified that he was concerned about being able to save enough money for retirement and was concerned about his continued ability to provide for the financial well-being of his wife and sister. He testified that, as a result of his injuries, he is frightened about his future and about his job security and that he is frustrated by his current condition. In addition, he testified that, as a result of his injuries, his relationship with his wife has suffered and has become more stressful because communication with her has become more difficult.

The evidence presents more than conclusory statements of "mere emotion," which have been held to not rise to the level of a compensable injury. *See Latham v. Castillo*, 972 S.W.2d 66, 70 (Tex. 1997); *see also Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 860-61 (Tex. 1999) (holding evidence that O'Byrne had experienced disappointment, mental pain, anguish, grief, and ridicule from friends for purchase of car not sufficient evidence to support mental anguish damages because some testimony did not relate to misrepresentations allegedly made and remaining testimony conclusory); *Saenz*, 925 S.W.2d at 614 (mental anguish evidence, which only consisted of testimony that plaintiff was afraid she would lose her home and was worried about paying medical bills in future, was legally and factually insufficient to support claim).

After viewing the evidence in the light most favorable to Browning, after crediting all evidence reasonable jurors could believe, and after disregarding all contrary evidence except that which jurors could not ignore, we conclude legally sufficient evidence exists to support the jury's award for future pain and suffering. *See City of Keller*, 2005 Tex. LEXIS 436, at *1-2. Similarly, after weighing the evidence, we cannot conclude that the award is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ford Motor Co. v. Bland*, 517 S.W.2d

15

641 (Tex. App.—Waco 1974, writ ref'd n.r.e.) (plaintiff suffering from closed head injury after automobile collision recovered for mental anguish after his doctor testified Bland was worried and depressed about his future and after demonstrating impairment to cognitive functions). Given the evidence presented regarding the severity of Browning's injuries, a jury could have concluded that an award of $500,000 was reasonable and fair compensation. Therefore, we hold that the evidence is legally and factually sufficient to support the award for future pain and suffering and overrule White's second issue.

*Past and Future Loss of Earning Capacity*

White also contends the evidence does not support the award for past and future loss of earning capacity. Earning capacity is the ability and fitness to work in gainful employment for any type of remuneration, including salary and commissions. *Strauss v. Continental Airlines, Inc.*, 67 S.W.3d 428, 435 n.2 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Because the amount of money a plaintiff might earn in the future is always uncertain, the jury has considerable discretion in determining the amount. *Tagle*, 155 S.W.3d at 519.

To support an award of damages for loss of future earning capacity, the plaintiff must introduce evidence sufficient to allow the jury to reasonably measure earning capacity in monetary terms. *Id*. In support, a plaintiff can introduce evidence of past earnings; the plaintiff's stamina, efficiency, and ability to work with pain; the weaknesses and degenerative changes that will naturally result from the injury; the plaintiff's work-life expectancy; and the plaintiff's age, health, and general physical condition. *Id.* In determining the sufficiency of the evidence, we must determine if the damages are proved to the degree the case is susceptible. *Strauss*, 67 S.W.3d at 436. There must

16

be some evidence that the plaintiff had the capacity to work prior to the injury and that his capacity was impaired as a result of the injury. *Tagle*, 155 S.W.3d at 520. If the earning capacity is impaired but not destroyed, the extent of the loss is best shown by comparing earnings before and after the injury. *Strauss*, 67 S.W.3d at 436. However, because the measure of damages is the loss of capacity to earn money, not actual lost earnings, proof of this injury does not necessarily require showing an actual loss of income. *See Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 35 (Tex. App.—Tyler 2003, pet. denied).

White contends that the only evidence of past and future earning capacity in this case are Browning's testimony that "it's very difficult to know how much [he made]" because of the uncertainties of his business, Browning's claim that he made one third of his normal income in 2003, and documents specifying the payments he received as commissions. White contends this evidence is insufficient. Further, White asserts that documents specifying Browning's commission income contain amounts that are inconsistent with income information contained in other documents. White also points to testimony by Browning's supervisor stating that Texonics had experienced a drop in overall sales over the last two years as partial explanation for Browning's income reduction.[5]

---

[5] In support of his contention that the evidence presented was insufficient to support the award for future and past loss of earning capacity, White cites to *Bonney v. San Antonio Transit Co.*, 325 S.W.2d 117, 121 (Tex. 1959) (court remanded case because evidence did not provide reasonable measure of earning capacity prior to injury; only evidence presented was that plaintiff had operated watch business, was in excellent health, was 39 years old, was unable to repair watches because of headaches and impaired vision, and was now manager of jewelry store); *Dallas Ry. & Terminal Co. v. Guthrie*, 210 S.W.2d 550, 552 (Tex. 1948) (court held evidence from plaintiff stating how much he made per year and evidence of life expectancy did not overcome inclusion of inappropriate evidence by accountant; accountant gave testimony regarding what profits from business would have been over 28 years, but testimony was based on tax documents that were either not produced or not authenticated and were not susceptible to cross-examination); and *Texas & N. O. R. Co. v. Wood*,

17

We disagree with White's characterization of the evidence. Browning brought sufficient evidence to support the award in this case. Browning presented evidence that his mental impairments from the "closed head injury" have negatively affected his work. He presented evidence that he forgets conversations, that he repeats himself, that he loses his train of thought, and that he has problems comprehending. He testified that now, as a result of the collision, it takes him much longer, up to three or four times longer, to perform his job functions and to perform the calculations required for his job. He demonstrated that, after the collision, he requires assistance from others to ensure that his work is accurate. Browning also testified to actions he engages in to function at work, including extensive note taking and tape recording of meetings. In addition, Browning also presented evidence that his efficiency in the work place has decreased dramatically and that this change was noticed by his co-workers and his clients. Browning's co-workers testified that, prior to the collision, Browning had been a self-sufficient and competent salesman but now required supervision. They further testified that Browning has to be reminded several times to complete a single task. Further, a co-worker testified that Browning's job was in jeopardy.

---

166 S.W.2d 141, 144-45 (Tex. Civ. App.—San Antonio 1942, no writ) (court concluded evidence by plaintiff amounted to unsupported conclusion; plaintiff did not testify about nature of business, e.g., number of employees, but testified expected to make $300 per week, was unable to work for three months, and guessed his earning capacity had been diminished by $5,000 over the previous year. On cross examination, plaintiff admitted he ran business during period of incapacity but could not state how much money he made).

These cases are distinguishable. Browning brought forth evidence of his earning capacity before and after the injury and evidence of his earnings. The evidence was based on testimony and on documents that were presented at trial and constituted more than unsupported conclusions about his loss of earning capacity.

18

Browning testified that he had planned on working for ten more years and presented evidence that his sales and, consequently, his income have dropped since the collision. Browning presented evidence that his commission income had dropped by $12,500 between 2001 and 2002 and by $12,500 between 2002 and 2003. Browning's commission sales actually increased between 2000 and 2001, but one of Browning's co-workers explained that there is a lag time between the time a sale is made and the time a commission is paid and reported because commissions are often paid months or years after a sale.

Similarly, Browning's co-workers testified that, before the collision, Browning had enjoyed sales equal to or greater than that of other salespeople in the company. They further testified that, after the collision, Browning's sales dropped below that of any other salesperson in the company and that Browning's sales dropped by forty to sixty percent.

After viewing the evidence in the light most favorable to Browning, after crediting all evidence reasonable jurors could believe, and after disregarding all contrary evidence except that which jurors could not ignore, we conclude legally sufficient evidence exists to support the jury's award for past and future loss of earning capacity. In addition, after weighing the evidence, we cannot conclude that the awards are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Therefore, we hold that the evidence is legally and factually sufficient to support the jury's awards for past and future loss of earning capacity and overrule White's third issue.

**CONCLUSION**

Having overruled all three of appellant's issues on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Pemberton:  Opinion by Justice Puryear;
    Concurring Opinion by Justice Pemberton

Affirmed

Filed:   January 19, 2006