NUMBER 13-05-00453-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


GABRIEL VANOUNOU, INDIVIDUALLY, AND

AS AGENT OF MEGA CUSTOM HOMES, INC.,

AND MEGA CUSTOM HOMES, INC., Appellants,


v.
 


DULCE CANTU, ET AL., Appellees.

 


On appeal from the County Court at Law No. 3 


of Cameron County, Texas.

 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Benavides and Vela

Memorandum Opinion by Chief Justice Valdez



 Gabriel Vanounou, individually and as agent of Mega Custom Homes, Inc. (MCH),
and MCH, appeal from an adverse judgment in a construction defect suit rendered in favor
of Gerardo and Dulce Cantu. (1) In three issues, Vanounou argues that the evidence is
legally and factually insufficient to support the jury's findings regarding: (1) damages
suffered due to a construction defect, (2) the reasonableness and necessity of repair costs,
and (3) the individual responsibility assessed against Vanounou. We affirm.

I. BACKGROUND

 Vanounou is the sole shareholder of MCH, a residential construction company. 
MCH constructed three townhomes on South Padre Island in 1999. The Cantus
purchased one of the newly constructed townhomes from MCH in August 1999 and used
the townhome as a second home. In June 2002, the Cantus discovered that water
penetration had significantly damaged the framing, ceilings, floors, sub-floors, and walls
of much of the home. The Cantus contacted Vanounou in an effort to remedy the situation. 
After an amicable agreement could not be reached, the Cantus filed suit against Vanounou
for, inter alia, negligence, breach of contract, breach of warranty, fraud, and violations of
the Residential Construction Liability Act. Vanounou answered with a general denial. 

 The case was tried to a jury. The Cantus called Hector Resendez to testify
regarding the cause of the damage and general construction practices. Resendez is a
general contractor, holds an associate degree in building construction technology, and has
worked for numerous construction companies. Resendez was contacted by Gerardo
Cantu to find the cause of the damage and to perform the remediation work. Resendez
testified that the building contained two construction flaws. First, a hose that ran from a
water line to the refrigerator in the kitchen had a kink in it. Resendez opined that the kink
happened when the cabinets were installed, caused pressure to build, and eventually
caused a leak. The second construction flaw, according to Resendez's testimony, is that
no flashing was installed in the balcony. Installation of flashing is standard in the
construction industry because, without it, water could penetrate inside the house. 

 Resendez also testified to the extent of the damage and the costs of remediation. 
He opined that the damage to the Cantus's townhome was extensive. As additional
evidence of the damage, the Cantus introduced photos showing mold growing on sheet
rock, doors, ceilings, and trusses. All of these photos were admitted into evidence. In
repairing the damage, Resendez employed between ten and twelve laborers. These
included an electrician, plumber, air conditioning subcontractor, carpet and title
professionals, and a painter. The trial court admitted into evidence two estimates from
Resendez Construction Services. The first is an estimate for remediation work to the
balcony for $17,200.00; the second is for what appears to be the remainder of the
townhouse and totals $50,000.00. Each estimate contains a detailed listing of the work to
be done. 

 Vanounou testified at trial regarding MCH's entity status, the quality of the
construction, and the cause of the water penetration. Vanounou testified that he owns
several clothing stores on South Padre Island, was deeply involved in the construction of
some of the commercial properties housing his clothing stores, and created MCH as a
construction company. He individually purchased the property on which the Cantus's
townhome was constructed and transferred it to MCH. At the time of trial, MCH had no
active checking account, no employees, no pending projects, and received its mail at
Vanounou's main office. During the construction project, MCH hired Jose Woloski as the
general contractor. A construction management agreement executed between Woloski
and Vanounou was admitted as an exhibit and states that, "Gabriel Vanounou will supply
the specifications, materials and sub-contractors." 

 Vanounou also testified about the construction of the Cantu's townhome and the
cause of the damage. According to Vanounou, he is an experienced developer and hired 
Woloski to construct the townhome project. Vanounou claims that flashing was installed
on the wall where the balcony is located and that the water damage to the townhome came
from the leak in the kitchen. He also claimed that the leaky kitchen hose was damaged by
the Cantus or was possibly an accident caused by moving the refrigerator.

 The jury was charged on three theories of liability: (1) negligence, (2) negligent
misrepresentation, and (3) construction defect. If the jury answered yes to either questions
one, two, or three, it was asked to assess damages for reasonable and necessary repairs
and attorney's fees and to determine whether Vanounou should be individually liable for
damages caused by MCH. The jury answered no to the negligent and negligent
misrepresentation questions; it answered yes to the construction defect question. The jury
also assessed the cost of repairs at $45,000.00 and attorney's fees at $10,000.00. Finally,
the jury found that Vanounou should be individually liable for MCH's damages. The trial
court entered a judgment in accordance with the jury's verdict. This appeal ensued.

II. DISCUSSION

A. Standards of Review

 All three of Vanounou's issues are challenges to the legal and factual sufficiency of
the evidence underlying various aspects of the judgment. We will sustain a legal
sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a
complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from
giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to
prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively
the opposite of the vital fact. City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). 
In conducting a legal sufficiency review, a court must consider evidence in the light most
favorable to the verdict, and indulge every reasonable inference that would support it. Id.
at 822. If there is more than a scintilla of evidence to support the challenged finding, we
must uphold it. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960
S.W.2d 41, 48 (Tex. 1998). 

 "When the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla
and, in legal effect, is no evidence." Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601
(Tex. 2004) (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). 
However, if the evidence at trial would enable reasonable and fair-minded people to differ
in their conclusions, then jurors must be allowed to do so. City of Keller, 168 S.W.3d at
822; see also King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). A
reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the
evidence falls within this zone of reasonable disagreement. City of Keller, 168 S.W.3d at
822.

 In conducting a factual sufficiency review, we must consider, weigh, and examine
all of the evidence that supports or contradicts the jury's determination. Plas-Tex, Inc. v.
U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); London v. London, 192 S.W.3d 6,
14-15 (Tex. App.-Houston [14th Dist.] 2005, pet. denied). We may set aside the verdict
only if the evidence that supports the jury's finding is so contrary to the overwhelming
weight of the evidence as to be clearly wrong or unjust. Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); Steinberg v. Comm'n for Lawyer Discipline, 180 S.W.3d 352, 355 (Tex.
App.-Dallas 2005, no pet.); Nip v. Checkpoint Sys., Inc., 154 S.W.3d 767, 769 (Tex.
App.-Houston [14th Dist.] 2004, no pet.).

B. Issue 1: Consistency of Jury Answers/Challenge to Causation Evidence

 By his first issue, Vanounou argues that the jury answers are inconsistent and that
this inconsistency is based on a lack of evidence. Vanounou highlights the fact that the
jury did not find him negligent and did not find that he made negligent misrepresentations
to the Cantus. According to Vanounou, the jury could not have found that the townhome
was defectively constructed because construction defect claims must be premised on
some other cause of action-such as negligence or negligent misrepresentation. Vanounou
also tangentially argues that the purported inconsistency in the jury's answers is because
the evidence is insufficient. 

 Vanounou advances his first issue without a single citation to statutory or case
authority. We hold that this issue is inadequately briefed, and we therefore overrule
Vanounou's first issue. See Tex. R. App. P. 38.1(h) (providing that the brief must contain
a clear and concise argument for the contentions made, with appropriate citations to
authorities and to the record). 

C. Issue 2: Challenge to the Sufficiency of the Evidence of Damages

 By his second issue, Vanounou argues that the evidence is insufficient to support
the award of damages because the Cantus failed to present evidence of the
reasonableness of their repairs and their mitigation efforts. He asks us to reverse the
judgment as to damages, or in the alternative to modify the judgment to reflect Resendez's
estimate for the repair work done to the balcony. Vanounou contends that he made a good
faith effort to remedy the Cantus's situation. (2) We disagree with Vanounou's assessment
of the evidence.

 Resendez testified as to the extent of the damages. Vanounou also testified as to
the extent of the damages. According to Vanounou's testimony, eighty percent of the first
floor and forty percent of the second floor suffered water damage. Resendez agreed with
Vanounou's testimony concerning the degree of water damage throughout the townhome. 
Two estimates prepared by Resendez were admitted into evidence. They detail the
amount of remediation work needed and present a total of $17,000.00 for the balcony and
$50,000.00 for what appears to be the remaining portions of the townhome. Both exhibits
were admitted without objection. To rebut the amount of damages, Vanounou testified that
he knew many subcontractors on South Padre Island and could have found cheaper
remediation work. 

 Vanounou also testified that the Cantus did not hire a housesitter to look after the
property in case of water leaks. On appeal, Vanounou now argues that the Cantus failed
in their "mitigation" efforts by not discovering the damage sooner. It was undisputed at trial
that the Cantus used their townhome as a second home and would spend extended
periods of time away from it. Vanounou's "mitigation" argument is really an argument
regarding failure to prevent damage. He has presented no authority on such a notion. 
Tex. R. App. P. 38.1(h). In any event, Gerardo Cantu testified that he contacted
Vanounou's office upon discovering moldy conditions in the townhome and hired Resendez
to find the problem and fix it.

 We conclude that the evidence is both legally and factually sufficient to support the
jury's verdict. See Jones v. Am. Economy Ins. Co., 672 S.W.2d 879, 881 (Tex.
App.-Dallas 1984, no writ) (providing "itemized statements" from person repairing
homeowner's damage supported amount of repairs). Vanounou's second issue is
overruled.

D. Issue 3: Piercing the Corporate Veil

 In his third and final issue, Vanounou contends that the evidence is legally and
factually insufficient to support a finding that Vanounou should be individually responsible
for the damages. We find that there was ample evidence to support an alter ego theory.

 The alter ego theory of liability applies when there is such unity between the
corporation and the individual that the separateness of the corporation has ceased and
holding only the corporation liable would be unjust. See Goldstein v. Mortenson, 113
S.W.3d 769, 781 (Tex. App.-Austin 2003, no pet.). Such unity can be shown where an
individual owns or controls the corporate entity and operates the company in a manner
indistinguishable from his personal affairs and in a manner calculated to mislead those
dealing with him to their detriment. See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 229
(Tex. 1990). 

 An alter ego relationship may be shown from the total dealings of the corporation
and the individual, including evidence of "the degree to which corporate formalities have
been followed and corporate and individual property have been kept separately, the
amount of financial interest, ownership and control the individual maintains over the
corporation, and whether the corporation has been used for personal purposes." See id.
at 228.

 The record shows that Vanounou owned and controlled MCH and exclusively made
all the decisions regarding the development company's "vision." When MCH was formed,
Vanounou individually purchased the property where the townhomes were constructed and
transferred the property to MCH. At the time of trial, MCH did not have an active checking
account, did not employ anyone, had no pending projects, and received its mail at
Vanounou's main office. The construction management agreement executed between
Woloski and Vanounou states that, "Gabriel Vanounou will supply the specifications,
materials and sub-contractors." Moreoever, Vanounou testified that MCH sold the Cantus
their townhome for $206,000.00, the other townhome for $195,000.00, and purchased his
own for $150,000.00. 

 The evidence presented at trial supports the jury's finding that there was a unity
between MCH and Vanounou such that MCH was no longer a separate entity and holding
only the corporation liable would be unjust. Accordingly, we conclude the evidence is both
legally and factually sufficient to support the trial court's imposition of liability on Vanounou
under an alter ego theory. Vanounou's third issue is overruled. 

 III. CONCLUSION

 The judgment of the trial court is AFFIRMED. Tex. R. App. P. 43.2(a).

 _______________________

 ROGELIO VALDEZ,

 Chief Justice


 

Memorandum Opinion delivered and filed 

this the 28th day of August, 2007.

1. Appellant's appeal is brought before us by a brief that was filed on May 30, 2006. Tex. R. App. P. 
38.7 (providing that a brief may be amended or supplemented whenever justice requires, on whatever
reasonable terms the court may prescribe).
2. We note that Vanounou's argument in favor of a modified judgment does not request an application
of the limitation's provisions contained in the Residential Construction Liability Act. Tex. Prop. Code Ann.§ 
27.004(e) (Vernon Supp. 2006). Additionally, the record does not contain a written settlement offer made by
Vanounou, which is required by the Act. Id. § 27.004(b).